301 So.2d 925 (1974)
Bennie DEAN, Plaintiff-Appellant,
v.
UNION NATIONAL FIRE INSURANCE COMPANY, Defendant-Appellee.
No. 12410.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1974.
Holloway, Baker, Culpepper & Brunson by Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Emmons & Henry by Joseph A. Reeves, Jr., Jonesboro, for defendant-appellee.
Before AYRES, BOLIN and HALL, JJ.
En Banc. Rehearing Not Considered, As Having Been Filed Too Late.[*]
AYRES, Judge.
This is an action upon fire insurance policies. Plaintiff seeks to recover losses sustained to his residence and contents by fire. Recovery is also sought for a sum equal in amount to the losses allegedly sustained and a reasonable attorney's fee as penalties for defendant's arbitrary refusal *926 or failure to pay the losses within the period prescribed by law.
The defense is that the policies of insurance lapsed and terminated eight months prior to the fire in which plaintiff allegedly sustained the losses for which he seeks payment. This lapse and the termination allegedly resulted from plaintiff's discontinuance of the payment of premiums. To this defense plaintiff countered with the proposition that no notice was given of the cancellation of the policies.
On trial the defense urged by defendant was sustained and plaintiff's demands were accordingly rejected. From a judgment thus rendered and signed, plaintiff appealed.
Under the express terms and provisions of the insurance contracts in question, Union National Fire Insurance Company provided coverage of the subject property against loss by fire "for the term beginning at noon of the date hereof to noon of the following Monday, standard time... and continuously thereafter, from Monday to Monday of each succeeding week for which the premium is paid in advance...." Moreover, each of the policies stipulated with reference to the payment of premiums:

"Payment of Premium: Each premium is due and payable in advance at the Home Office of the Company, but may be accepted elsewhere by a duly authorized agent. All premiums paid shall be forfeited to the Company and this policy shall terminate by lapse and all liability hereunder shall cease when the required premiums are more than four weeks in arrears. If the agent shall not call for the premiums when due or shall refuse to accept said premiums, the Insured is required, without notice, to pay the premiums at the branch office of the Company or remit the same directly to the Home Office." (Emphasis supplied.)
No serious question relative to the nonpayment of premiums is presented. The fire occurred on August 18, 1973. Plaintiff admittedly discontinued making premium payments on or about December 12, 1972. In May 1973, he discussed this fact with the agent who collected premiums. The collector's testimony supports defendant's position that plaintiff, in 1972, stopped paying premiums, even though he called at plaintiff's residence to make collections. Nevertheless, after failing to effect a collection, the collector again returned to plaintiff's residence, at which time no one was at home.
The records kept by defendant support the proposition that no premiums were paid for a period of approximately eight months prior to the fire. Although plaintiff's records were said to have been destroyed in the fire, his testimony with respect to payments was vague and unconvincing. His principal reliance was based upon defendant's failure to give him notice of the cancellation of the policies. The failure of defendant's collector to continue to solicit premium payments at plaintiff's residence after a former failure to collect affords plaintiff no right or justification, as hereinabove pointed out, not to make the payments.
As we had occasion to observe in Sumrall v. Aetna Casualty and Surety Company, 124 So.2d 168, 180 (La.App., 2d Cir., 1960writs denied, 1961):
"A policy of insurance is a contract between the parties and, so far as they are concerned, it is the law of the case. The rules for its interpretation are the same as for the interpretation of agreements generally. Where the language is clear and expresses the intention of the parties, the contract is enforced as written.... However, in construing the provisions of an insurance contract as binding the parties thereto, the words of the agreement will be given their general and popular interpretation and not that which is strained and unusual. LSA-C.C. Art. 14. If the terms are clear and unambiguous, they are to *927 be taken and understood in their plain and ordinary sense. While all uncertainties and ambiguities must be construed in favor of the insured and against the insurer, courts are unauthorized to alter the terms of the policies under the guise of interpretation when they are couched in unambiguous language...."
See the authorities therein cited, as well as Herring v. American Bankers Insurance Company, 216 So.2d 137, 139 (La.App., 2d Cir., 1968writs denied, 1969).
In Richardson v. American Nat. Ins. Co., 18 La.App. 468, 137 So. 370 (Orl., 1931), the beneficiary of an accident and health insurance policy brought an action to recover its face value, certain accruals, attorney's fees, and penalties. To that action defendant filed exceptions of no right or cause of action on the ground that from the face of the record it appeared the accidental injury and death of the insured occurred at 4:45 p.m. on February 20, 1929, and, therefore, after the policy had lapsed and the liability of the defendant had been suspended at 12:00 noon, standard time, February 15, 1929, under the express terms and conditions of the contract, for nonpayment of the premiums due at that time, and also after the expiration of the five-day grace period, which ended at 12:00 noon, standard time, on February 20, 1929, all as expressly provided in the policy. There was no uncertainty or ambiguity in the language of the policy. Hence the policy was found to have lapsed and defendant's liability terminated. The court concluded that under both the common law and the provisions of our civil code (LSA-C.C. Art. 2057), contracting parties have the right to stipulate the performance of their contract by an agreed hour or by or on a certain day. In this connection the court cited: Edington v. Michigan Mutual Life Insurance Co., 134 Tenn. 188, 183 S. W. 728; Matthews v. Continental Casualty Co., 78 Ark. 81, 93 S.W. 55; Troy Automobile Exchange v. Home Insurance Co., 102 Misc. 331, 169 N.Y.S. 796, 798; Tufts v. Carradine, 3 La.Ann. 430, 431; Wittenberg v. Trautman, 3 La.App. 787.
See, also: Hospital Service District No. 1 v. Delta Gas, Inc., 141 So.2d 925 (La.App., 4th Cir., 1962).
We conclude, therefore, that the policies of insurance with which we are now concerned lapsed and terminated pursuant to their terms and stipulations by nonpayment of premiums. The express provisions of LSA-R.S. 22:636, having reference to cancellation of policies by the insurers, are inapplicable to contracts provided for in Part XV of Chapter 1 of the Insurance Code, under the provisions of which the policies in the instant action were issued. Hence no notice of cancellation was required where the insured failed to pay the premiums, which failure ipso facto lapsed the policies and terminated the insurer's responsibility.
The judgment appealed is accordingly affirmed at plaintiff-appellant's costs.
Affirmed.
NOTES
[*] Dennis, J., took no part.