**Mrs. Theone M. HALPERN**

v.

**LEXINGTON INSURANCE COMPANY.**

Civ. A. No. 82–0903.

United States District Court,
E.D. Louisiana.

March 11, 1983.

Nathan T. Gisclair, Jr. and Gus A. Fritchie, III, Montgomery, Barnett, Brown & Reed, New Orleans, La., for plaintiff.

Ernest L. O'Bannon, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, La., for defendant.

CHARLES SCHWARTZ, Jr., District Judge.

This matter came on for non-jury trial on a former day. No witnesses testified, but it was agreed to by the parties that the stipulations made in open court, together with the supplemental stipulations submitted by the parties, the exhibits, and the depositions on file in the record, would constitute all of the testimony and evidence in the case. Now, after careful review of the record, the memoranda of counsel, and the applicable law, the Court rules as follows.

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

Plaintiff, Theone M. Halpern, is a resident of the State of Louisiana.

Defendant, Lexington Insurance Company, is a surplus lines insurance company which is neither incorporated within nor licensed to do business within the State of Louisiana.

Effective June 1, 1980, for a period of three years, Lexington Insurance Company issued a policy of insurance, No. F816-0-88-77, on certain property including 1519-21 Prytania Street, New Orleans, Louisiana, with named insureds being Mrs. Theone M. Halpern and the Home Furnishings Store, Ltd.

Said policy provided coverage for fire damage to 1519-21 Prytania Street up to $75,000.00 on the "building(s) or structure(s)" at said location, including "attached additions and extensions." The policy also provided for a $1,000.00 deductible.

Said policy was procured by Mr. Al Schlesinger, an insurance broker, under instructions from plaintiff's husband, Mr. Alvin Halpern, acting as agent for the plaintiff.

Mr. Halpern gave to Mr. Schlesinger a list of several properties owned by his wife on which fire insurance was to be procured, describing said properties by the municipal numbers of the buildings situated thereon. Included in this list was a building designated as 1519-21 Prytania Street.

The building located at 1519-21 Prytania Street was acquired by plaintiff on February 14, 1979. At the same time and in the same act of sale, plaintiff acquired a separate tract of land and building designated by the municipal address 1513 Terpsichore Street. The two tracts of land were purchased in a credit sale for the sum of $65,000.00.

Plaintiff requested that her husband obtain insurance on all of her properties including 1519-21 Prytania Street and 1513 Terpsichore Street. Mr. Halpern did not include 1513 Terpsichore Street on the list of properties for which Mr. Schlesinger was to procure insurance coverage, because Mr. Halpern believed that 1519-21 Prytania and 1513 Terpsichore formed one and the same property.

Mr. Schlesinger inspected the properties listed by Mr. Halpern in his request for insurance. Schlesinger did not know of the existence of the building 1513 Terpsichore, and did not see same on the occasion of his inspection of 1519-21 Prytania. When Schlesinger submitted plaintiff's application for fire insurance to Lexington Insurance Company, he did not list the municipal address 1513 Terpsichore, nor did he in any way indicate that the building thereon was to be covered by the policy.

The insurance premium paid by plaintiff, and the $75,000.00 of insurance thereby secured for 1519-21 Prytania, could have been sufficient to cover both the building at 1519-21 Prytania and the one designated as 1513 Terpsichore. In other words, the premium charged by defendant would have been the same whether plaintiff insured only the building at 1519-21 Prytania for $75,000, or assigned the $75,000 insurance value to the two buildings *in globo*.

On or about July 24, 1981, the building designated as 1513 Terpsichore was totally destroyed by fire, and the building designated at 1519-21 Prytania was damaged by fire, the damages consisting of the following: 1513 Terpsichore—$13,466; 1519 Prytania—$490.00.

1519-21 Prytania is a two-story wooden frame building which fronts on Prytania Street and consists of a number of separate apartments. The building designated as 1513 Terpsichore was a two-story wooden frame building, including two apartments, which was six to eight feet behind 1519-21 Prytania, and eighty plus feet from Terpsichore.

Access to Terpsichore was only by way of a six-foot wide common alley, described in the deed, between other buildings which front on Terpsichore and are not involved in this litigation and are owned by other parties.

Although in the deed plaintiff acquired a servitude of use over said alley, nevertheless access to the foregoing alley was physically barred by a locked gate at the time of the Halpern purchase, and the Halperns never requested nor were they provided with keys to said gate, and the gate remained locked and the alley was never used to the knowledge of the Halperns.

Access to the building designated at 1513 Terpsichore was available by means of a six-foot wide alley fronting Prytania Street and running along the Melpomene side of the building designated as 1519–21 Prytania and between that building and a building designated as 1517 Prytania.

There was a four to six-foot wide uncovered walkway which led from the rear doorway of 1519–21 Prytania to the entrance of the building designated as 1513 Terpsichore.

The rear wall of the building designated as 1519–21 Prytania was located approximately six feet from the Prytania Street side wall of the building designated 1513 Terpsichore.

Running between the two buildings were electrical wires, water pipes and telephone lines, which would have been visible to anyone who might have walked between the buildings prior to the fire. Running beneath the ground, but between the two buildings, were gas and sewerage pipes.

The electrical, gas and water meters for each apartment in both buildings were physically located in the building designated as 1519–21 Prytania, or the sidewalk adjacent to 1519–21 Prytania. Electrical, gas and water bills for utility services used in both buildings were received at the address, 1519–21 Prytania.

Prior to Halpern's purchase, the two buildings when not vacant, were used as apartments. At the time of the fire, 1519–21 Prytania was being used as a warehouse for the Halpern's furnishings store, and the building designated as 1513 Terpsichore was vacant.

Lexington Insurance Company has denied that the building designated as 1513 Terpsichore is covered under its policy of insurance number F816–0–88–77. Lexington has denied coverage for the damage to the building designated 1519–21 Prytania on the basis that the damage thereto was below the deductible limit of $1,000.00.

Plaintiff has filed suit for the total damages sustained, less the deductible, and for penalties for Lexington's alleged arbitrary and capricious denial of plaintiff's claim.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this civil cause of action pursuant to Title 28, United States Code, Section 1332, and venue is proper in the Eastern District of Louisiana.

This being a diversity of citizenship case, the Court is bound to follow Louisiana law.

The policy of insurance entered into by plaintiff and defendant in this case did not specifically include the 1513 Terpsichore Street address. Therefore, plaintiff can only recover damages here if the building designated by the municipal address 1513 Terpsichore Street should be considered (a) a "building or structure" at the 1519–21 Prytania Street address listed on the policy; or (b) an "attached addition" to the building located at said address.

In the interpretation of an insurance contract, the Court is bound by the manifest intention of the parties. Generally, the Court should only consider the language of the contract itself, giving the words chosen their plain, ordinary and unambiguous meaning. Where the terms of the contract are ambiguous or susceptible of more than one interpretation, however, parol evidence is admissible to clarify the ambiguities and to show the intentions of the parties. LSA–C.C. Art. 2276; *Gulf States Finance Corp. v. Airline Auto Sales, Inc.*, 248 La. 591, 181 So.2d 36 (1965); *Texhoma Contractors v. So. Shipbldg. Corp.*, La.App., 337 So.2d 584 (4th Cir.1976); *Atlas*

*Lubricant Corp. v. Federal Insurance Company of New Jersey,* La.App., 293 So.2d 550 (4th Cir.1974); *Dean v. Union National Fire Insurance Co.,* La.App., 301 So.2d 925 (1st Cir.1974).

▮ In this case, the language of the contract does not appear to be ambiguous. It covers only buildings, structures, additions, or extensions located at 1519–21 Prytania Street. The building destroyed by fire was located at 1513 Terpsichore Street.[1]

Even assuming, however, that there is sufficient ambiguity to warrant consideration of parol evidence, the Court must still construe the contract in favor of defendant here and deny plaintiff any recovery.

Looking at the events leading up to and including the entering into of the contract between plaintiff and defendant, it is apparent that no agent or representative of defendant was ever made aware of the existence of the building located at 1513 Terpsichore or of the fact that plaintiff had any intention of insuring said building under its policy for 1519–21 Prytania. Mr. and Mrs. Halpern may have fully intended to cover the building under the policy, but such intention was never even communicated to their insurance broker, Mr. Schlesinger, much less any agent or representative of the defendant. Mr. Halpern did not list

1513 Terpsichore for Schlesinger, nor did he inform him about it, and Schlesinger did not notice the building at the time of his visual inspection of the property.

Schlesinger, by his own admission, was acting throughout as Halpern's agent, not defendant's, and it was Schlesinger who met with defendant's representatives and arranged the specifics of the insurance contract. Moreover, it was Mr. Halpern himself who drew up the description of the properties to be insured, which description was passed along to defendant and did not include any mention or indication that 1513 Terpsichore or any property thereon was to be included in the policy.

In general, ambiguities in an insurance policy are to be construed favorably to the insured and adversely to the insurer. *Dean v. Union National Ins. Co.,* La.App., 301 So.2d 925 (1st Cir.1974). This rule, however, is subject to the limitation that it will not be applied to produce an unreasonable and absurd result. *See, e.g., Southern States Masonry Co. Inc. v. Mission Ins. Co.,* La.App., 353 So.2d 307 (1st Cir.1977), *writ refused* (1978). Furthermore, when it is the insured or his broker who supplies the language in question, here the description 1519–21 Prytania Street, the reasons behind

---

1. Plaintiff argues that the policy language "additions or extensions" is *not* ambiguous and is uniformly applied throughout the jurisprudence of the United States to include buildings in such circumstances as the one destroyed by fire in this case. Citing cases from other jurisdictions, plaintiff argues that the building destroyed by fire was "attached" to the main building by virtue of electrical wiring, gas pipes, sewerage and drainage pipes, water pipes and phone lines, and by general use. The cases cited by plaintiff, however, all involve different policy language and different factual situations from the instant case. Moreover, the two Louisiana cases on point hold to the contrary. *J.R. McMahon v. Peoples National Fire Insurance Co.,* 14 Orl.App. 269 (1917); *Melder v. Great American Insur. Co.,* La.App., 9 So.2d 243 (2nd Cir.1942).

  Although the language of the policies involved in each of these two cases varies somewhat from the policy at issue here, the opinions state unequivocally that "additions to a building include only structures as are attached to and structurally connected with the main build-

ing..." 14 Orl.App. at 270; 9 So.2d at 243. Furthermore, in *McMahon,* the court adopts the definition of "buildings and additions" from the "Encyclopedia of Law and Procedure," as follows:

  "Building and additions: In general the description of a building covers only the single and complete structure, and not separate structures used in connection with it, nor walls or fixtures not constituting part of the permanent structure. So too, it is well settled that the term 'buildings and additions' does not cover structures not structurally connected with and dependent upon the main building."

14 Orl.App. at 270–71.

Not being structurally connected to the 1519–21 Prytania building, the building destroyed by fire would thus, under Louisiana law, appear not to be an "addition or extension." Even if not dispositive of the issue, the cases cited at least dispose of any argument that the policy language "additions and extensions" is unambiguous enough to include, on its face, the building destroyed by fire.

the rule of construction favoring the insured completely disappear. *See, e.g. J. Ray McDermott & Company, Inc. v. Fidelity and Casualty Company of New York*, 466 F.Supp. 353, (E.D.La.1979).[2]

■ Whatever the actual intent of the plaintiff may have been, the manifest intent of the parties, as evidenced by the contract itself and the communications between the plaintiff and her agents, on the one hand, and defendant and its agents, on the other, was clearly to insure only such property as was located at 1519–21 Prytania. The Court may not alter the manifest intent of the parties and reform an insurance contract, absent a finding of mutual mistake by the parties or mistake on one side and fraud on the other. *Gaudet v. North River Insurance Company*, 156 La. 719, 101 So. 118 (1924). There was no mutual error and no suggestion, much less evidence, of fraud on the part of the defendant.

Accordingly, the Court finds that plaintiff is not entitled to collect any insurance proceeds from defendant for damages to 1519–21 Prytania Street and/or 1513 Terpsichore Street, caused by fire on or about July 24, 1981.

The Clerk of Court is directed to enter judgment in accordance with the foregoing.

2. The insurer is entitled to know exactly what property is insured, particularly when as here, there is an 80% co-insurance clause. If this rule were otherwise, the insurer would be placed in a very unfair position, in that it would be unable to pin down the total square footage of property insured. For example, if there are two buildings potentially covered by an insurance policy, and a fire damages only one building, the question of whether the policy covers one or both buildings could have great ramifications on the effect of the co-insurance clause. If read to cover only the building damaged by fire, the face value of the policy might well be 80% of the value of the building damaged by fire. However, if the other building is included on the policy, the face value applicable to the damaged building might well not meet the 80% requirement. An insured could, then, for co-insurance purposes, claim only the one building on the policy, and yet, in case of fire to the second building, claim both on the policy. Therefore, to interpret ambiguity in such situations against the insurer, particularly when the ambiguous language is supplied by the insured, would be to allow insureds the possibility of claiming one interpretation for co-insurance purposes and another for coverage purposes.